POLLOCK
*v.*
WILLIAMS.

---

### SAMUEL STEWART *v.* THE CITY OF NEW ORLEANS.

A municipal corporation, in the exercise of power which it possesses for *public purposes*, and which it holds as part of the country, enjoys the exemption of government from responsibility for its own acts and the acts of its officers deriving their authority from the sovereign power.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.

*Thomas Hunton*, for plaintiff:

The only question in this case is, whether the city of New Orleans is liable for the misfeasances of her police, who in the exercise of their functions use an undue degree of violence, and while in the service of the city, destroy the property of the citizen.

The District Judge decided that she is so liable. In the case of *McGary* v. *The City of Lafayette*, 12 Rob. 668, the court gave a "lesson to those who invest with power, men who are regardless of law and of private rights." Upon the authority of that case and of *Johnson* v. *Municipality No. One*, 5th La. Annual, 100, and the cases there cited, I confidently rely, for an affirmance of the judgment of the District Court, and respectfully ask this court to give a second "lesson" to those who invest with power, reckless men.

*T. L. Bayne*, and *Thomas R. Wolfe*, for defendant and appellant.

CAMPBELL, J. (OGDEN, J., and BUCHANAN, J., dissenting.) Plaintiff seeks to render the city of New Orleans liable for the value of a slave, alleged to have been killed by the officers of the late Second Municipality.

It is alleged, that in January, 1852, the lieutenant of the watch, aided by other watchmen under his command, while in the regular service and employment of the Municipality No. Two, without any justifiable cause, made an assault, with clubs, upon the slave of plaintiff, and inflicted upon him wounds of which he died.

The defence is, the general denial.

It is in proof that, on the 21st July, 1852, a detachment of the police officers of the municipality, was ordered by their chief to suppress unlawful assemblages of slaves in cabarets; that in performance of this duty they entered a dram-shop, in which the slave of plaintiff was found; that the slave attempted to escape, was pursued and overtaken by the watch, and that, in capturing him, wounds were inflicted of which he died.

It may likewise be conceded, though the facts are by no means clearly proved, that when the watchmen entered the cabaret, the slave was neither

STEWART
*v.*
CITY OF NEW OR-
LEANS.

drunk nor disorderly; that his conduct and character were good; that he was seated by the fire warming himself, and made no resistance; but merely sought to avoid capture by flight, and that he might have been arrested without taking his life.

The question presented is, whether under this state of facts, the city of New Orleans is amenable in damages for the acts complained of, by the act of consolidation, being bound by the obligations and liabilities of the Second Municipality.

Under the general rule regulating the liability of municipal corporations for the acts of their agents within their ordinary scope of employment, the District Judge held the city liable, and rendered judgment for the value of the slave and the expenses of his illness.

The judgment we think erroneous; and the error results from a failure in the application of the principle, to make the proper distinction between the liability of municipal corporations for acts of its officers, in the exercise of powers which it possesses for public purposes, and which it holds as part of the government of the country, and those which are conferred upon it for private purposes.

Within the sphere of the former, it enjoys the exemption of government from responsibility for its own acts and the acts of its officers deriving their authority from the sovereign power; (see *White* v. *City Council*, 2 Hill So. Ca. R. 571, as cited in the notes to *Wilson* v. *Beverly*, 1 An. leading cases, 469; also, *Martin* v. *Mayor, &c., of Brooklyn*, 1 Hill N. Y. 545, 550, and *Mayor et al.* v. *Furze*, 3 Hill N. Y. 612, 618;) whereas, in the latter, it is answerable for the acts of those who are in law its agents. *Baily* v. *Mayor of New York*, 3 Hill N. Y. 352. Same case in Error, 2 Demio, 434, 450.

In the case of *Baily* v. *The Mayor of New York*, Nelson, C. J., in treating of the difference between the powers conferred on municipal corporations in their public character, for public purposes, and those conferred on the same corporation for private advantage, with the view of distinguishing one class from the other, says: " To this end, regard should be had, not so much to the nature and character of the various powers conferred, as the object and purpose of the Legislature in conferring them. If granted for public purposes, exclusively, they belong to the corporate body in its public or municipal character. But if for purposes of private advantage, though the public may derive a common benefit therefrom, the corporation, *quoad hoc*, is to be regarded as a private company."

In the case of *Martin* v. *Mayor of Brooklyn*, 1 Hill, 550, the court say: " It is impossible to maintain that a village corporation is liable for a wrong committed by its officers. It is a political body, bound, I admit, and liable to an action when incurring a debt, through its corporate officers, acting within the line of their duty; but not for either a nonfeasance or misfeasance committed by independent corporate officers."

The inquiry which is next presented is, whether the powers under which the officers of the municipality acted, were conferred for public purposes? If so, it follows that the city is not liable for the acts of their officers, even though illegal, or of such a character as to subject the officers themselves to liability.

The Act of 1805, incorporating the city of New Orleans, provides for the appointment of a Mayor, Recorder and Aldermen, and such subordinate officers "for preserving the peace and well ordering the affairs of the city, as the

council shall direct. Through all the changes of city government, this power has been continued, and the conclusion therefore, that these powers are governmental, is strengthened by the fact, that the Constitutions of 1845 and 1852, both provide that "the citizens of the city of New Orleans, shall have the right of appointing the several public officers necessary for the administration of the police of said city, pursuant to the modes of election which shall be provided by the Legislature; and the Legislature may vest in them such criminal jurisdiction as may be necessary for the punishment of minor crimes and offences, and as the police and good order of the city may require." Art. 128. So that the right of regulating the police of the city of New Orleans does not rest alone upon legislative permission, but is authorized by the Constitution itself.

Under these sanctions, watchmen are appointed as a necessary branch of the police of the city. Their duties are the preservation of public order and tranquility, and the city in appointing them, exercised a governmental function, conferred upon it, in its public or municipal character, for public purposes, exclusively, and is not therefore liable for the acts of its officers.

It is therefore ordered and adjudged, that the judgment of the District Court be annulled and reversed, and that there be judgment in favor of the defendants; the costs of both courts to be paid by plaintiff and appellee.

SLIDELL, C. J. I concur in the conclusion, that the municipal government is not liable in this case.

VOORHIES, J. I concur in the opinion of Mr. Justice Campbell.