## No. 12,467.

### CITY OF NEW ORLEANS VS. GEORGE P. KERR AND JOHN GALLY.

The powers and obligations of municipal corporations are twofold in character, (1) those that are of a public nature, and (2) those that are of a private nature.
As to the first, the municipal corporation acts as the agent of the State—discharging duties incumbent upon the State—and as the representative of sovereignty is not answerable for the non-feasance or malfeasance of its officials.
As to the second, the corporation represents the pecuniary and proprietary interests of individuals, and the rules which govern the responsibility of individuals are properly applicable.
While, in a general sense, not liable for the non-feasance of its officers, the city of New Orleans is responsible for damages arising *ex contractu*, having as their source the breach of a contract duly executed by its corporate agents acting within the scope of their authority and in the line of their duty.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

*James J. McLoughlin*, Assistant City Attorney, and *Samuel L. Gilmore*, City Attorney, for Plaintiff, Appellee.

*John C. Wickliffe* and *Joseph N. Wolfson* for Defendants, Appel-
lants.

Argued and submitted November 29, 1898.
Opinion handed down February 7, 1898.
Rehearing refused April 4, 1898.

The opinion of the court was delivered by

BLANCHARD, J.   This is an action brought by the city of New Or-
leans against the defendants for a balance  due  upon  a sale or lease
of the franchise or right to  impound stock  within  the  city's limits,
and to receive the fees therefor.

Defendant Kerr, who was the pound  contractor, answered that
while there was an apparent balance due the city on his contract, he
was absolved from liability therefor by reason of flagrant breaches
of the contract on the part of the city in failing to  give  him proper
police protection in the  discharge  of  his  duties  as  pound  keeper,
without which  his  contract  was  unavailing,  and  in  harassing and
annoying him through its officers and agents.

Then, assuming the character of  plaintiff in  reconvention, he set
up a claim against  the city for nine thousand three  hundred  and
twenty-two dollars and thirty- seven cents for  damages accruing to
him by reason of the breaches  of  contract  aforesaid.   This claim is
set forth with much detail.

The judgment below was against both parties.   It  rejected plain-
tiff's original demand and that of defendant in  reconvention.

Defendant alone appeals, and the case is  before  us only as to the
reconventional demand of the latter.

Defendant's contract with the city was entered into on the first of
May, 1891, and was  for the term of one  year.   The Mayor, who
executed the contract on behalf of the city, was specially authorized
thereto by ordinances of the  City Council, and the  formal contract
was in confirmation of a sale and adjudication of the pound franchise
previously made to defendant.

. The words used are that the city  " does by these presents grant,
bargain, sell and confirm " unto the defendant " the revenues of the
public pound " for the period named.

The ordinances of the city  relative  to  the  impounding  of stock

were referred to in the instrument, and the principal one was copied bodily into it as a part of the contract.

One section of this ordinance declares that all animals found upon the streets contrary to its provisions " are to be taken up by the police, the contractor or his assistants and placed in the nearest pound," etc.

Another section provides " that it shall be the duty of the city police to render such service or assistance as may be necessary to the pound keepers in the discharge of their duty."

Some four or five months after the contract became operative, another ordinance was adopted by the City Council, which, after first declaring that experience had shown the impracticability of enforcing the pound contract without proper police protection and that it was the duty of the city police to render such assistance as was necessary to the pound keeper, his assistants and employees in the discharge of their duty, proceeded to request the Board of Police Commissioners to instruct the superintendent of police to make a permanent detail of two officers for the purpose.

Still later, and about a month before defendant's contract was to expire, further action was taken by the City Council in the form of a motion adopted requesting the Mayor to direct the superintendent of police to require the strict enforcement of the preceding ordinance relative to pounds, and calling upon the several recorders of the city to see to the enforcement of the same, and admonished them that in case of failure to do so they would be held amenable to the council for dereliction of duty.

These several corporate acts are practical admissions that theretofore the city ordinances relating to the impounding of stock and the city's obligation to the pound contractor with reference thereto had not been adequately enforced.

And the testimony taken leaves no doubt upon the mind of the truth of this fact.

It was not possible to carry out the contract without police protection and assistance.

The contractor, his drivers and assistants were threatened, assaulted, beaten and driven off.

Cattle and other stock taken up and on their way to the pounds were rescued by mobs.

Frequent arrests of the defendant were made on charges of illegal

conduct in carrying out the contract, on all of which charges, save one, he was acquitted, and as to the one upon which he was convicted, he was subsequently released on a writ of *habeas corpus*.

Once he was locked up all night and part of a day in the city prison on a trumped-up charge.

One of his pounds was broken into by police officers claiming to act under order of the then acting Mayor, and a horse impounded released.

Other acts of misfeasance and non-feasance of the police and other city officials, in reference to defendant and his contract with the city, are shown.

He was not furnished the necessary police protection and assistance, and for the greater part of the time it was withheld from him entirely.

Indeed, it is shown that the then Mayor gave an order that no police protection be given defendant, and that because of this order the Chief of Police refused details of policemen.

The record teems with evidence of application after application made by defendant and his attorney for police protection and assistance.

There is no room for doubt that the contractor was ready at all times to carry out his contract, willing and anxious to do so and zealous in his efforts thereunto. So much so, in fact, that it resulted in numerous complaints lodged against him.

That he may in instances have overstepped the limits of a just discretion in the manner of its execution, is probable. But there was a proper way of meeting this and of dealing with him in regard thereto without withholding the protection and aid of the police necessary to the legitimate execution of his duties under the contract and guaranteed to him by the instrument evidencing the same.

The amount he was to pay to the city monthly under his contract was thirty-one dollars.

That he did not pay all the monthly instalments and owed a balance of two hundred and seventy-one dollars, which the city sued for herein, is explained by him on the ground of the city's failure to meet its obligations to him under the contract.

The way defendant was to be compensated for the work done under his contract was by fees collected on animals impounded, and the evidence shows the franchise was a valuable one, and, perhaps,

lucrative, if adequate police protection and assistance had been extended him.

The powers and obligations of municipal corporations, like the city of New Orleans, are twofold in character: those that are of a public nature and those that are of a private nature.

This court by repeated decisions has recognized this distinction. 1 An. 437; 9 An. 461; 12 An. 190, 482; 14 An. 120; 26 An. 478.

As to the first, or public character of its powers and obligations, the municipal corporation represents the State—discharging duties incumbent on the State. As to the second, or private character of its powers and obligations, the municipal corporation represents the pecuniary and proprietary interests of individuals.

As to the first, where a municipal corporation acts as the agent of the State, it becomes the representative of sovereignty and is not answerable for the non-feasance or malfeasance of its public agents.

As to the second, the rules which govern the responsibility of individuals are properly applicable. Am. and Eng. Ency. of Law, Vol. 15, p. 1141; Western College vs. City of Cleveland, 12 Ohio St. 337; Rusher vs. City of Dallas, 16 S. W. 333; Whitefield vs. City of Paris, 19 S. W. 566; O'Rourke vs. City of Sioux Falls (S. D.), 54 N. W. 1044; 61 Fed. Rep. 64; 62 Fed. Rep. 240.

In the instant case one of the items of damage claimed by defendant is one thousand dollars for his illegal arrest and imprisonment by the police under the direction of the city officers.

Under the distinction between the powers and obligations of the city above noted, no liability attaches to her on account of this act of malfeasance of her officers. Stewart vs. City, 9 An. 462; Lewis vs. City, 12 An. 190; 2 Dillon, Sec. 975.

This was a tort and the action based thereon arises *ex dilicto*.

But as regards other items of damage claimed (to be noted later), the action to enforce same arises *ex contractu*, and the city is liable. Vidalat vs. City, 43 An. 1122; 2 Dillon on Corporations, Secs. 935, 980, 981, 983.

The city had the right to impound cattle; it comes within the police powers of the city. (Am. and Eng. Ency. of Law, Vol. 10, p. 137). It is necessary to insure cleanliness and the public safety. Having the power to do this itself, it could let it out by contract and did so, and stipulated as part of the contract that it would furnish police protection to enable its contractor to perform his duty and carry out

27

the contract.   Failing to do this, it is liable as for breach of the contract.

While not liable for the non-feasance of its officers in a general sense, it is liable for debts incurred through its corporate agents acting within the scope of their authority and the line of their duty. It is on this principle that it is liable to defendant for failure of its obligation to furnish him the means of fulfilling his contract, upon which depende l alike the performance of his duty to the city and the realization to himself of the profits of the enterprise.

In La Rosa vs. Mayor, 4 La. 24, it was held that when the city of New Orleans made an adjudication of a certain right, if done in reference to and conformity with an ordinance of the City Council, it imposes all the obligations' and confers all the rights created by the ordinance. See also Johnson vs. Municipality, 5 An. 100; McLaughlin vs. Same, 5 An. 504.

If we view the city as vendor of this franchise to the defendant, then she is liable for breach of the warranty respecting the buyer's peaceable possession of the thing sold.   C. C. 2476, 2500 et seq.

If we view the city as lessor of the right, then she is liable for breach of her obligation to cause the lessee to be in peaceable possession of the thing during the continuance of the lease.   C. C. 2692, 2696.

So far as defendant's reconventional claim is one sounding in damages arising ex contractu, he is entitled to be reimbursed the loss he has sustained and the profit of which he has been deprived, to the extent that the proof substantiates the same.   That is to say, he may recover such damages as were contemplated or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract.   43 An. 1128; C. C. 1934; 3 An. 105; 11 An. 300.

Defendant claims twenty-five dollars for the destruction of his pound in the Fifth Municipal District. The evidence does not establish this item with sufficient certainty and it is disallowed.

The same is true of the claim for twenty dollars, amount of pound fees said to have been collected in the Fifth District, and which officers of the city are alleged to have compelled his representative to refund, and the claim for twenty-five dollars for pound fees on stock represented to have been turned out of the said pound by the city's representative.

Both items are disallowed.

The claim of one thousand and fifty dollars for pound fees upon four hundred and twenty head of stock, taken up by defendant, and which, while being driven to the pound, were rescued and taken from his custody by mobs and lawless people, is made out and must be allowed.

Under the pound ordinances of the city and under his contract, the moment stock running at large were apprehended by the pound keeper, his right to the pound fees attached, and if by reason of the lack of sufficient police assistance such stock is forcibly taken from his custody, the city became liable for breach of its contract obligation to furnish the protection necessary in the premises. Moreover, the stock being apprehended and his claim to the fees having attached, the latter became a right of property, for damages to which by mobs and riotous assemblages the city is responsible under the statutory law. Section 2580, Revised Statutes.

The claim of four thousand eight hundred and thirty-five dollars and thirty-seven cents for pound fees alleged to have been lost by reason of the city's failure to furnish police protection during two hundred and sixty-seven days of the contract can not, on a review of the whole evidence, be held to be made out with sufficient certainty. This item is asserted under the head of " profit of which he has been deprived," and was calculated on the basis of the contractor's earnings on the days when he did have police protection. See Schleider vs. Dietman, 44 La. An. 462.

On the next item, one thousand two hundred and eighty-seven dollars for the rent of the pounds during the two hundred and sixty-seven days, when defendant could not use them because of lack of police protection, nine hundred and thirteen dollars is allowed, being the amount defendant testifies he actually paid out for such rent during that time. This is a damage for which the city must be held liable. The pounds were useless without the police protection necessary to enable defendant to impound stock, and defendant could not give up the pounds and save the expense, for he could not foresee that the policy of withholding police protection would continue. He was compelled to be ready himself to perform his duty at all times, and one of the requisites to this end was the maintenance of pounds for the detention of stock.

With regard to the last item, one thousand and eighty dollars,

compensation to employees, drivers and pound-keepers during the time defendant was without police protection, the evidence does not establish with certainty that this much is due. We are satisfied, however, that defendant is entitled to an allowance under this head, and will put it at one-half of the sum claimed, or five hundred and forty dollars.

The city is liable for this on the same principle that the claim for rent of the pounds is sustained.

We have given due consideration to the several defences urged on part of the city against the reconventional demand, but are constrained to hold that so far as this claim is herein sustained, they have not been found to be applicable.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from, in so far as the same rejects in whole the demand in reconvention, be annulled, avoided and reversed, and it is now ordered that defendant, George P. Kerr, do have and recover of the city of New Orleans, on his demand in reconvention, the sum of two thousand five hundred and three dollars, with legal interest thereon from judicial demand, to-wit: September 10, 1892, together with costs in both courts.