(99 South. 419)

No. 25971.

### DAVIS v. NEW ORLEANS PUBLIC BELT R. R.

### In re DAVIS.

(June 30, 1923. Rehearing Denied by the Whole Court March 3, 1924.)

*(Syllabus by Editorial Staff.)*

Municipal corporations &#8709;733(1)—Railroad operated by city held not a governmental agency immune from suit for tort.

The city of New Orleans in operating the Public Belt Railroad, created under Act No. 179 of 1908, and the amendment to the Constitution adopted in 1916 (see Amendments to Const. 1916, p. 16), is exercising a municipal or corporate function for private gain and not a governmental agency, and hence the railroad was subject to suit for damages for the killing of plaintiff's son by its train at a street crossing.

Action by James Davis against the New Orleans Public Belt Railroad. Judgment for defendant was affirmed by the Court of Appeals, and plaintiff applies for writ of review. Judgment annulled and set aside, and case remanded.

Edward Rightor and Walter L. Gleason, both of New Orleans, for applicant.

Wm. McL. Fayssoux, and McCloskey & Benedict, all of New Orleans, for respondent.

By the WHOLE COURT.

DAWKINS, J. Plaintiff alleges that his son was killed by a train of the defendant at a street crossing in the city of New Orleans. Defendant excepted upon the ground that the petition disclosed no cause of action for the reason that it was a governmental agency and not liable for tort. The trial court referred the exception to the merits, but sustained it after trial upon the authority of Jones v. City of New Orleans, 143 La. 1074, 79 South. 865. The Court of Appeals affirmed that judgment, and the case is now before us for review.

## Opinion.

In his reasons for judgment, the district judge found as a fact that the defendant's employés were guilty of negligence, and that there should be a recovery but for the character of the defendant; hence the only question which we are called upon to determine at this time is as to whether the defendant is liable for a tort under circumstances such as are disclosed by this record.

We found in the case of Jones y. City, supra, that the person for whose act the city was sought to be held liable, was, at the time, a duly appointed police officer of the city of New Orleans, assigned to guard the property of the Public Belt Railroad, which is not a separate municipal corporation, but a specially created department of the city intrusted with the operation and control of the Public Belt Railroad System. Therefore the said officer was clearly acting as an agent for the discharge of the governmental duties of the city, out of which, according to all authority, no liability, in damages can arise. It was unnecessary, under that finding of fact, to determine the question of what the rights of the parties would have been, had the agent been discharging any ordinary duty connected with the operation of the railroad system; and what was said upon that point must necessarily be considered as obiter.

We shall not go into the matter of whether, if the board of port commissioners should find it necessary to take over and operate the railroad system to insure the payment of the bonds, it would be liable for a tort; it will be time enough to determine that question when and if such an issue should arise. We shall confine ourselves to the question of liability of the city through the Public Railroad Belt Commission under the facts of this case.

The city of New Orleans, on October 8, 1904, by its ordinance No. 2683, New Commission Series, created the Belt Railroad Commission, and made an appropriation of $40,000 for its operation. The purpose of creating this commission was to provide a system for handling freight in railroad cars between different points within the city for its convenience and that of its inhabitants, and, to establish uniform charges for that service. In 1908 the Legislature passed Act No. 179, authorizing the city of New Orleans to issue certain bonds for the purposes of the Public Belt Railroad Commission which the said city "may heretofore have organized, or may hereafter organize * * * the powers, duties and functions of which shall be prescribed by the city of New Orleans"; and, in section six of said act, it was further provided:

"That there shall be. and there is hereby irrevocably dedicated to the people of the city of New Orleans for perpetual and exclusive public use said Public Belt Railroad System, as the same has been heretofore, or may hereafter be established by the city of New Orleans, the title and use to which said Public Belt Railroad System shall be and shall forever be in the people of the city of New Orleans."

Section 7 further provided:

"That the city of New Orleans shall construct, equip, maintain and operate said Public Belt Railroad System of the city of New Orleans through and by means of such board or commission, as may have been or may be organized by the city of New Orleans, the members of which shall be appointed by the mayor of the city of New Orleans, with the consent of the council, the powers, duties and functions of which shall be prescribed by the city of New Orleans. * * * The control, administration, management and supervision of the construction, maintenance, operation and development of the Public Belt Railroad of the city of New Orleans shall be exclusively vested and remain in such board or commission, which shall always be separate and distinct from that of any railroad entering the city. * * * And said Public Belt Railroad System shall be and remain the sole property of the people of the city of New Orleans at all times, and shall in no way or manner ever be hypothecated, * * * provided, however, that the revenues of said Public Belt Railroad of the city of New Orleans, after the deduction of expenses of maintenance and operation, shall be and remain pledged for

the payment of the bonds in principal and interest, the issue of which is herein authorized; to such extent as may be necessary under this act."

,By an amendment to the Constitution submitted and adopted in 1916 (see Amendments to Const. p. 16), the city of New Orleans was granted "plenary and exclusive power, by such means and methods as it may deem meet and proper not in conflict with the provisions·of this amendment" to build and operate bridges and tunnels across the Mississippi river, with all approaches, appurtenances, etc., necessary thereto; that such bridges, tunnels, etc., should be and remain an "integral part of the Public Belt Railroad System * * * which system the said city of New Orleans is hereby authorized to extend and operate beyond the parish of Orleans," and the powers of the Public Belt Railroad Commission were declared to be as provided in the Act 179 of 1908, and to include said bridges, tunnels, etc., as well as all other property of the system. The said amendment further provided:

"(4) The Public Belt Railroad Commission, under such terms and conditions as it may deem advisable, shall have the right to switch, handle or convey, in continuous movement, for any railroad, trains over such bridges or through such tunnels and over the main lines of the Public Belt Railroad to the depot or yard of said railroad or to any union passenger ·depot or union terminal of the Public Belt Railroad System; it being understood that the sole purpose of this provision is to facilitate the movement of trains entering the city of New Orleans on the east or west bank of the Mississippi river. Under no condition can the Public Belt Railroad Commission grant switching privileges to any railroad over the Public Belt Railroad System."

Later provisions dealing with the Public Belt Railroad System appear in the Constitution of 1921, but since the accident in this case happened on the 23d of June, 1921, before that Constitution went into effect, we shall not refer to them in this opinion.

Having thus shown the nature and origin of the defendant, and the manner in which it operates and functions, as well as the limitations placed upon it, can it be said to be exclusively a governmental agency, and, if not, was the work in which it was engaged at the time of the accident such as to render it liable for the death of plaintiff's son?

Whatever question there may have been in the beginning as to the city's right to create the commission, or to operate a public ·belt railroad system, the same has been removed by the Act 179 of 1908 and the amendment to the Constitution, in effect ratifying the action of the council. We think there could be but little doubt that, if the city of New Orleans or any other municipality was authorized to build and operate a steam railroad system for the private benefit of its inhabitants and for profit, the same would be done under its municipal or corporate powers, and not as a governmental duty.

"While a municipal corporation in performing or omitting to perform a duty imposed upon it as an agent of the state,in the exercise of strictly governmental or state business is not liable to private action on account of injuries resulting from the wrongful acts or negligence of its officers and agents, yet, in every state except South Carolina, it is the settled rule that a municipality is liable at common law for its torts in the performance or nonperformance of municipal or corporate duties, as distinguished from governmental duties. In other words, where its officers or servants are in the exercise of power conferred upon the municipality for its private benefit or profit, and damages result from their negligence or misfeasance, the municipality is liable to the same extent as in the case of private corporations or individuals.

"In so far as municipal corporations exercise powers not of a governmental character, 'voluntarily assumed powers intended for the private advantage and benefit of the locality and its inhabitants, there seems to be no sufficient reason why they should be relieved of that liability to suit and measure of actual damages to which an individual or private corporation exercising the same powers for purposes essentially private would be liable;' and it is held that, while acting in this private capacity, a municipality is liable for negligence to the same extent as a private corporation or individual,

and is liable to its employés to the same extent as other employers. * * * And a municipality will not be permitted to say whether or not it shall be held liable for personal injuries resulting from negligence in the performance of such duties, nor to impose unreasonable restrictions upon the rights of injured persons to bring actions against it for damages therefor." McQuillin on Mun. Corps. vol. 6, p. 5394, § 2622, and authorities cited in footnote.

See, also, City of New Orleans v. Kerr & Gally, 50 La. Ann. 413, 23 South. 384, 69 Am. St. Rep. 442, and authorities therein noted.

The duty of operating a public belt railroad through a commission was voluntarily assumed by the city of Orleans in its original ordinance heretofore mentioned, which was subsequently approved and ratified by the Legislature and constitutional amendment. This was done solely for the private benefit of the city and its inhabitants. It is true that the said act and amendment have subsequently hedged it about with certain restrictions and limitations, but this was for the protection of the bondholders and to insure a continuance of its operations for the benefit of the people of the community. However, this has not had the effect of making it a state agency solely charged with the discharge of a governmental function; nor has there been any provision exempting it from the character of liability here claimed. Its nature and purpose still remain the same, i. e., that it is a department of the city of New Orleans, discharging a municipal or corporate function for private gain and for the private benefit and advantage of its inhabitants.

We see nothing in this case and no pertinent authority has been cited to take it out of the ordinary class for which the city through the Public Belt Railroad Commission is liable for the accident, if due to the fault of the defendant, its agents, or employés.

For the reasons assigned, the judgment of the Court of Appeals is annulled and set aside, the exception of no cause of action is overruled, and this case is remanded to the said court to be decided upon its merits; defendant to pay the costs of this application, and all other costs to await final judgment.

Rehearing refused by the WHOLE COURT.