(101 South. 1)

No. 23898.

**SOLOMON v. CITY OF NEW ORLEANS.**

(May 5, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Municipal corporations ⬦723 — Exemption from liability for wrongs strictly construed.**

The claim under which a municipality seeks exemption from liability for alleged wrongful act as being in exercise of governmental function must be strictly construed.

**2. Municipal corporations ⬦747(2) — Operation of railroad not governmental function, within exemption from liability for negligence.**

The city of New Orleans in the operation through a commission appointed for that purpose of the Public Belt Railway System is not exercising a governmental function, relieving it from liability ex delicto for damages caused by negligence of employees in operating railway.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mrs. Mattie Solomon against the City of New Orleans. Judgment for defendant, and plaintiff appeals. Judgment set aside, and exception of no cause of action overruled, and cause remanded.

George J. Untereiner, of New Orleans, for appellant.

Ivy G. Kittredge, James O'Connor, and Wm. McL. Fayssoux, all of New Orleans, for City of New Orleans.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. The plaintiff's husband, Gaston F. Solomon, was killed while on the track of the public belt railroad in September, 1912. He was employed by the Armour Packing Company, and had delivered some freight to a steamship moored at the foot of Julia street. After delivering the freight he returned to his mule team which had been left at the corner of Fulton and Julia streets, and found his mules greatly frightened and panic-stricken as a result of the noise and rapid movement of an engine attached to some freight cars on the track of said railroad. He caught hold of the reins and harness and endeavored to quiet and control the mules, but was unable to do so, and was thrown down across the railroad track where the said track curves from Julia street into Fulton street. While down on the track, the employés of the city in charge of the engine and cars, in execution of a flying switch, shunted a string of freight cars into and on the track on Julia street, which cars ran over Solomon and crushed out his life. The widow sues the city for $20,000 damages for the suffering and death of her husband.

An exception of no cause of action was filed by the city, but was overruled. After an answer was filed, a motion to reconsider the exception of no cause of action was made, and on the second trial of the exception the court sustained same and dismissed plaintiff's suit.

The question presented for decision is whether the city of New Orleans is liable ex delicto for damages caused by the negligence of its agents, servants, and employés in the operation of the said public belt railroad system; and this involves the further question as to whether the city in its control and operation of the said railroad system

was exercising functions strictly governmental and as the agent of the state, or was acting under its corporate and municipal powers.

The record is silent as to the date when the public belt railroad system was established, nor are we advised under what special or particular grant of power the same was established. It is an undisputed fact, however, that the railroad system was constructed and put into operation by the city long prior to the year 1908.

In that year, by Act 179, the Legislature authorized the city of New Orleans to issue a stated amount of bonds, to be styled, "public belt railroad bonds of the city of New Orleans," the proceeds of the said bonds to be used by the said city for the construction and equipment of a public belt railroad system in and for the said city. Section 6 of said act provides:

"That there shall be and there is hereby irrevocably dedicated to the people of the city of New Orleans for perpetual and exclusive public use said public belt railroad system, as the same has been heretofore, or may hereafter be established by the city of New Orleans, the title and use to which said public belt railroad system shall be and shall forever be in the people of the city of New Orleans."

Section 7 of the act provides:

"That the city of New Orleans shall construct, equip, maintain and operate said public belt railroad system * * * through and by means of such board or commission, as may have been or may be organized by the city * * * the members of which shall be appointed by the mayor, * * * the powers, duties and functions of which shall be prescribed by the city of New Orleans. The city of New Orleans shall always have the power and authority to make such changes in the location of the tracks and roadbed of the public belt railroad system as may * * * be deemed necessary or proper."

The legislation just referred to and quoted from, in so far as pertinent, had a twofold purpose; (1) To ratify and confirm what the city had already done in constructing and putting the railroad system in operation; and (2) to authorize the city to provide the means by which the undertaking could be carried out.

There is not to be found anywhere in the act or in any other legislation any reservation of supervision or control in the state of the railroad system, but, on the contrary, the entire and absolute control and administration was recognized and confirmed in the city to be exercised through a commission to be appointed or which had already been appointed by the city, and the ownership of this railroad system was dedicated to the people of the city.

This was but declaratory of an existing fact. It has never been considered, so far as we are advised, a governmental function of the state to build, equip, and operate railroads for the benefit of the people of the state at large or for the people of the municipalities. The state was under no particular or special obligation to establish the railroad system under consideration for the inhabitants of the city, and no intention on the part of the state to do so on its own behalf, can reasonably be inferred from the legislation referred to. As we have heretofore stated, the only purpose had in view, as clearly appears from the language of the entire act, was to approve and confirm what the city had already done, and to grant such power to the city as was necessary to enable the city to perfect and to carry out the business venture it had inaugurated in the interest of the people of the city. The contention, therefore, that the city of New Orleans in its connection with and relation to the belt railroad system is merely representing the state in the capacity of the state's agent, is as unjustifiable as it is fundamentally unsound.

Nor is there any greater force in the contention that the board of commissioners is a governmental agency separate and dis-

tinct from the municipality. The board is the agent of the city, and not of the state. It is subject to the appointment by the mayor and council, and is at all times under the control of the mayor and council,

No one will controvert the fact that a municipality may own and operate a railway system, passenger or freight, electric or steam, under proper legislative or constitutional grant, as all municipal powers must come from the sovereign. But because the municipality is a creature of the sovereign, it does not follow that in carrying out the legislative mandate to engage in such private local municipal enterprise the municipality functions only as the agent of the state.

It seems to be universally recognized by the text-writers and by jurisprudence that the powers and obligations of a municipal corporation are of a twofold character: (1) Those that are of a public nature; and (2) those that are of a private nature. Thus 28 Cyc. p. 1257, states the rule as follows:

"A municipal corporation has a dual character, the one public and the other private. In the former case its functions are political and governmental. * * * In its second character, the corporation stands upon the same footing with private corporations and will be held to the same responsibility with a private corporation for injuries resulting from its negligence."

See, also, Stewart v. New Orleans, 9 La. Ann. 461, 61 Am. Dec. 218; Bennett v. New Orleans, 14 La. Ann. 120; New Orleans v. Kerr, 50 La. Ann. 413, 23 South. 384, 69 Am. St. Rep. 442.

[1] The line of demarcation between where the powers of a municipal corporation as the agent of the state end, and those merely local, private, and for corporate purposes begin, is often difficult of determination. But it is quite clear that the distinguishing character of municipal authority determines the liability or nonliability of a municipality for injury and damage arising ex delicto. And in determining this question the rule is that the claim under which a municipality seeks exemption as being in the exercise of a governmental function must be strictly construed. Bennett v. New Orleans, 14 La. Ann. 120.

It is held as a rule that a city in supplying water and light to its inhabitants acts as a private corporation and is subject to the same duties and responsibilities. 20 A. & E. E. p. 1196.

In the case of Elias v. Mayor, 137 La. 691, 69 South. 141, it was held:

"The liability of a municipal corporation, which lawfully engages in the business of operating an electric light plant to light streets and public places and to sell current to its inhabitants, is governed by the rules applicable to any private corporation or individual conducting a similar enterprise."

And in 20 A. & E. E. p. 1197, it is stated by the author that:

"The fact that an enterprise is attended with or undertaken for the pecuniary profit of the city is usually sufficient to characterize it as local and corporate in character and nature as distinguished from enterprises public or governmental."

[2] Our conclusion is that the public belt railway system of New Orleans is owned and operated by the city for pecuniary profit under a lawful grant of authority from the state; that it is a private enterprise of the said city, not governmental in its nature and character, and that the city is liable for the negligence and torts of its agents and servants in the operation of said enterprise.

The precise question here involved was at issue in the case of Davis v. New Orleans Public Belt R. R. No. 25971 on the docket of this court, 99 South. 419,[1] the opinion in which was handed down June 30, 1923. We there held that the said railway system

---

[1] 155 La. 504.

was a department of the city of New Orleans, discharging a municipal function for private gain, and for the private benefit and advantage of the inhabitants of the city. We have considered the able and exhaustive brief of the special counsel for the public belt commission for the city of New Orleans and the authorities cited and discussed by them, but we see no reason to depart from our former ruling in the Davis Case.

For the reasons assigned, the judgment appealed from is set aside, the exception of no cause of action is overruled, and the case is remanded to the civil district court, Division B, to be proceeded with according to law; cost of appeal to be paid by the defendant appellee.

————

(101 South. 4)