No. 8747.

Orleans Appeal.

HARRY N. HOLDEN, Appellant, v. TOYE BROTHERS AUTO AND TAXICAB CO., INC., AND THE SEWERAGE AND WATER BOARD OF THE CITY OF NEW ORLEANS.

(February 2, 1925, Opinion and Decree.)
(March 16, 1925, Rehearing Refused.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Municipalities—Par 259, 261.**

The placing of several red lanterns, intended as a warning, upon a plank loosely supported by wooden horses, situated before a large street excavation, is not sufficient precaution or such reasonable care in the interest of public safety due by one charged with such responsibility in order to warn vehicular traffic of impending danger when it appears that at the time the lanterns were put in place a high wind was blowing, well calculated to destroy the insecure support of the lanterns or danger signals.

2. **Louisiana Digest—Negligence—Par. 141; Act of God—Par. 4, 8.**

A fortuitous event or act of God, the consequences of which could reasonably have been anticipated and averted by ordinary care and prudence will not relieve defendant from responsibility for the result of his negligence.
Brannon vs. Y. and M. V. Railroad Co., 129 La. 916, 57 South. 172.

(Civil Code, Art. 3556, Par. 15. Editor's note.)

3. **Louisiana Digest—Act of God—Par. 4.**

The responsibility of a carrier for the safety of passengers though imposing the duty to exercise a high degree of care is not absolute and the carrier cannot be held for consequences beyond his control.

Appeal from the Civil District Court, Hon. H. C. Cage, Judge.

This is a damage suit for personal injuries. There was judgment for defendan and plaintiff appealed.

Judgment for plaintiff and against the "Sewerage and Water Board," and judg

ment for defendant, "Toye Brothers Auto and Taxicab Co., Inc."

Samuel Wolf, Ed. Rightor, Solomon S. Goldman, attorneys for plaintiff and appellant.

Walter L. Gleason, special counsel.

J. P. Sullivan and D. Sessler, P. M. Milner, attorneys for defendant and appellee.

WESTERFIELD, J. This is a suit for personal injuries brought by the plaintiff against the Toye Bros. Taxicab Co., and the Sewerage & Water Board. There was judgment below in favor of both defendants and plaintiff has appealed.

The undisputed facts are as stated by counsel for plaintiff:

"On the evening of September 21, 1920, between 8 p. m. and 8:30 p. m., Mr. Holden and his wife engaged a 'for hire' automobile, owned and operated by Toye Bros. Auto & Taxicab Co., Inc., to take them from the Grunewald Hotel to their home at 387 Audubon St., this city. The Taxicab Company's starter at the hotel called an automobile, gave instructions to the chauffeur as to the route he should take, and the automobile started off with plaintiff and his wife seated on the rear seat. The automobile proceeded out Canal St. and turned into Carrollton Ave., going in the direction of St. Charles Ave.

"When the automobile reached a point at about the intersection of Carrollton Ave. and Panola St., it ran into an excavation in the roadway of Carrollton Ave. made by the Sewerage & Water Board. As a result of the accident, plaintiff sustained very severe injuries, the principal injury being a fractured knee cap which necessitated a serious and painful operation, the removal of several pieces of bone, confined plaintiff to the Touro Infirmary for about four weeks, and to his home for another three or four weeks. Plaintiff was first able to walk about with the aid of a cane about December 1, or something more than two months after the injury. Up until the time of the trial, November, 1922, fourteen months after plaintiff had sustained the injury, the wound was still sensitive and the injured knee would not flex more than 70 or 80 degrees. He had incurred a hospital bill of $679.20, a surgeon's bill of $750.00, nursing bills of $416.00, bills for crutches, surgical appliances and anesthetic, $25.75, and

$50.00 to a hospital orderly who aided plaintiff in regaining his ability to walk and recovering the use of his injured leg, a total expense of $1,920.95"

Plaintiff contends that the accident was caused by the joint negligence of the Taxicab Company and the Sewerage & Water Board, the Taxicab Company in that it failed to operate its automobile with the care required of a public carrier, and the Sewerage & Water Board in that it failed to properly guard the hole excavated by it in the roadway and to warn the public of its presence.

Both defendants deny all charges of negligence.

The accident occurred on the upper side of Carrollton Ave., where under traffic regulations vehicles may proceed in one direction only or from the lake towards the river. Carrollton Ave. is a wide street separated by a neutral ground and the upper roadway is at the point where the accident occurred 24 feet in width. The excavation into which the automobile was driven was a large one considering the width of the street, approximately 6 by 9 feet, and about 4 feet in depth. It was within 5 feet of the neutral ground and extended 6 feet crossways of the street. There was not room for automobiles to pass between the hole and the neutral ground, thus requiring all motor vehicles to pass between the hole and the curb of the sidewalk on the upper side of the avenue. It was a most dangerous obstruction of the highway, fraught with peril to all vehicular traffic unaware of its presence. It was, of course, the duty of the Sewerage and Water Board to give warning of the danger by proper lights and barriers. Did the Board take proper measures to safeguard the public? The testimony shows that three red lanterns were placed about the hole suspended to a plank 1x12 inches in thickness and length supported by two wooden horses; that these lanterns were filled with oil and lighted by laborers employed in the excavation under the direction of their foreman at the time that work ceased for the day or between 5 and 6 o'clock in the afternoon. When the accident happened we are satisfied, as was the judge of the trial court, that there were no red lights about the hole and no street lights, or white way lights as they are termed, burning along the neutral ground. A heavy rain was falling and a high wind blowing. It is contended on behalf of the Sewerage and Water Board that the lights and barrier were placed about the hole in the usual manner and were sufficiently protected and supported to have remained in place under ordinary conditions and that if they were not there or not burning at the time of the accident it was due to the extraordinary conditions prevailing, the wind and rainstorm, which was of unusual intensity. In other words, vis major, or as it is termed in the common law, the act of God. There is no question that the weather conditions were unusual. It was blowing and raining hard. But it had been blowing and raining at intervals all day. It was raining much harder at 1 p. m. than at 9 p. m., the time of the accident. The wind steadily increased in velocity. At 6 a. m. it was six miles per hour. At 7 a. m. it was 7 miles per hour. At 8 a. m. 9 miles. At noon, 15. It blew steadily at this rate with gradual increase in velocity all afternoon, and at 5 p. m. when work ceased and the lights were placed about the hole it was blowing 20 miles per hour and when the accident occurred, 34 miles per hour.

"An injury caused by the act of God or a superior agency without the fault of defendant will not impose any liability on him. An act of God is defined as inevitable accident without the intervention of man and the public enemy. To constitute an act of God in such sense as to relieve defendant from liability for injury it must have been so far outside the range of ordinary human experience that the duty of

exercising ordinary care did not require it to be anticipated or provided against. Thus it has been decided that winds of extraordinary violence, extraordinary rainstorms, floods and frosts are classed as acts of God within the rule exempting defendant from liability." Cyc., Vol. 29, Verbo. Negligence, p. 441.

. But occurrences which might reasonably be anticipated are not acts of God in the legal sense. Corpus Juris Verbo. Act of God, Vol. 1, p. 1175. R. C. C. 3556 §15.

Negligence consists in failing to act with such care and skill as the circumstances of the particular situation require. It frequently happens that the natural consequences of an act of God may by the exercise of reasonable prudence and foresight be averted. The sudden and unprecedented overflow of a river is such an act of God as would relieve a railroad company from liability and danger to freight caused thereby if after knowledge of the danger the company did not unnecessarily expose it but made all effort to save it. U. S. vs. Kansas City Southern R. R. Co., 109 Fed. 471. .

"The foundation of the rule that the act of God excuses the failure to perform a duty is the maxim 'Lex neminm cogit at impossibilia'. If by the use of reasonable care, prudence and diligence under the circumstances of a particular case, it is possible to discharge the duty, then those circumstances do not constitute a valid excuse for a failure to perform it. Nothing less than such a fortuitous gathering of circumstances preventing the performance of a duty as could not have been foreseen or overcome by the exercise of reasonable prudence, care and diligence constitutes an act of God which will excuse the discharge of the duty. Southern Pacific Co. vs Shover, 114 Fed. 466." Corpus Juris, Vol. 1, Verbo. Act of God, p. 1174. Note 28b.

The defendant Sewerage and Water Board failed to exercise reasonable prudence and care demanded by the circumstances of this case. It was not sufficient to hang their red lanterns on the frail structure employed by it on the day in question. It was apparent that unusual conditions obtained; that an unusual wind would prevail during the night and it could reasonably have been anticipated that the lanterns and the flimsy barrier supporting them would be blown away, however sufficient such measures might have been for ordinary occasions. The excavation was particularly dangerous and extraordinary care was required. The failure to exercise such care was culpable negligence. This is not a case of sudden and unexpected elemental violence. There was every indication of the approaching climax of the windstorm which had been steadily gathering force during the day. It was at a season, when in this climate, such conditions though unusual are nevertheless to be expected.

As to the Taxicab Company, co-defendant, we find no culpable fault notwithstanding the high degree of care which the law exacts of public carriers of passengers. The chauffeur was driving slowly at the time of the accident. He was driving near the neutral ground because the curb side of the street was flooded to such an extent that he feared his engine might stop if he should drive through the water. He could not anticipate the presence of the large hole in the street and he could not see it. There was nothing to give warning or notice of the dangerous pit in the roadway. His headlights he testifies were in good order, but due to the rain and darkened appearance of the wet asphalt pavement of the roadway lighted only a very limited path before him.. We can find no fault with the chauffeur's management of his car and can not see how he could have avoided the accident under the circumstances.

There remains only the question of the quantum of damages. The defendant was seriously injured. His knee cap was broken. Several small pieces of the knee cap removed by an operation following the accident were offered in evidence. He was

four weeks in the hospital and could not walk without a cane for a month more. He cannot flex or bend his knee more than 80 per cent of normal. He limps when he walks and this condition is likely to be permanent. He spent about $2,000.00 in hospital charges for nurses and doctors as a result of the injury.

Under the circumstances we think an award of $5,000.00 would be proper.

For the reasons assigned it is ordered that the judgment appealed from be reversed in so far as it is in favor of the defendant Sewerage and Water Board of the City of New Orleans, and it is now ordered that there be judgment in favor of the plaintiff, Harry N. Holden, and against the Sewerage and Water Board of the City of New Orleans in the sum of $5,000.00 with interest thereon at the rate of 5 per cent per annum from March 2, 1921, until paid, and with costs of both courts.