## MANGUNO v. CITY OF NEW ORLEANS.†
### No. 14829.

Court of Appeal of Louisiana. Orleans.
May 21, 1934.

Richard A. Dowling, of New Orleans, for appellant.

E. M. Robbert, Acting City Atty., and Henry B. Curtis and Charles A. O'Niell, Jr., Asst. City Attys., all of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiff sued the city of New Orleans to recover damages for personal injuries, medical expenses incurred, and loss of earnings alleged to have resulted when one of the defendant's steel garbage trailers broke loose from the truck that was hauling it and ran into the Buick automobile that the plaintiff was driving in the opposite direction on the Chef Menteur Highway on September 30, 1930, at about 11:50 o'clock a. m. The employees of the city are alleged to have been at fault in not properly fastening the heavy iron trailer to the truck.

The defendant filed exceptions of no right or cause of action which was referred to the merits. It then answered reserving the benefit of the exceptions, admitting that the accident occurred, denying that its employees were guilty of negligence, and reiterated the defense under the exceptions to the effect that the collection and disposal of the garbage by the city was a governmental function and, therefore, it was not liable for the negligent acts of its employees and agents in discharging their duties in respect thereto.

There was judgment in favor of the defendant dismissing the suit, and plaintiff has appealed.

■ The allegations of the petition, as well as the evidence introduced on the trial of the case, show that the city of New Orleans is a municipal corporation; that availing itself of the provisions of Act No. 248 of 1912, as amended by Act No. 34 of 1914, it built and maintained garbage incinerator plants and automobile trucks and steel or iron trailers for the purpose of collecting and conveying to the incinerator the garbage collected; that the trailers were fastened together by a coupling consisting of a drawhead with a pin; that on the date in question the truck had conveyed the loaded trailers to the incinerator, where they were emptied, and was returning on the Gentilly Highway; that plaintiff was driving the Buick sedan car in the opposite direction on the same highway; that as the two vehicles approached each other one of the trailers became unfastened, careened to its left, and crashed into the left front side of the Buick car, severely and painfully injuring the plaintiff about the face.

We experience little difficulty in reaching the conclusion that the defendant's employees were guilty of negligence because its evidence shows that the trailer became unfastened due to the vibration which caused the coupling to turn in such a position as to dislodge the pin. If the coupling had been properly and carefully made, there is no doubt that the accident would not have occurred.

■ The question of law presented, i. e., whether or not the operation of the garbage incinerator plants and their auxiliaries by the city is a governmental or municipal function, is not so easy of solution. The acts of the Legislature under which the incinerators are operated do not impose upon the city as an agency of the state the duty of operating them. The city authorities have the right to contract with third persons for the operation of municipal garbage incinerators or operate them themselves.

■ The law is well settled that, where the state as a sovereign delegates governmental functions to a municipality, it cannot be held liable for the tortious acts of its officials, representatives, and employees in discharging and performing those duties. However, municipalities are liable in damages for the negligence and carelessness of their officials, representatives, and employees in performing municipal or corporate functions. 19 R. C. L., verbo "Municipal Corporations," par. 392, p. 1111; 43 Corpus Juris, verbo "Municipal Corporations," par. 1702, p. 925.

This doctrine has been recognized by the courts of this state. In the case of City of New Orleans v. Kerr, 50 La. Ann. 413, 23 So. 384, 386, 69 Am. St. Rep. 442, the court said:

"The powers and obligations of municipal corporations like the city of New Orleans are twofold in character: Those that are of a public nature, and those that are of a private

nature. This court, by repeated decisions, has recognized this distinction. Egerton v. City of New Orleans, 1 La. Ann. 437; Stewart v. City of New Orleans, 9 La. Ann. 461 [61 Am. Dec. 218]; Lewis v. City of New Orleans, 12 La. Ann. 190; Howe v. City of New Orleans, 12 La. Ann. 482; Bennett v. City of New Orleans, 14 La. Ann. 120; New Orleans, M. & C. R. Co. v. City of New Orleans, 26 La. Ann. 478.

"As to the first or public character of its powers and obligations, the municipal corporation represents the state—discharging duties incumbent on the state. As to the second or private character of its powers and obligations, the municipal corporation represents the pecuniary and proprietary interests of individuals.

"As to the first, where a municipal corporation acts as the agent of the state it becomes the representative of sovereignty, and is not answerable for the nonfeasance or malfeasance of its public agents.

"As to the second, the rules, which govern the responsibility of individuals are properly applicable. 15 Am. & Eng. Enc. Law, p. 1141; Western College v. City of Cleveland, 12 Ohio St. 375; Rusher v. City of Dallas, 83 Tex. 151, 18 S. W. 333; Whitefield v. City of Paris, 84 Tex. 431, 19 S. W. 566 [15 L. R. A. 783, 31 Am. St. Rep. 69]; O'Rourke v. City of Sioux Falls, 4 S. D. 47, 54 N. W. 1044 [19 L. R. A. 789, 46 Am. St. Rep. 760]; Gianfortone v. City of New Orleans [C. C.] 61 F. 64 [24 L. R. A. 592]; City of New Orleans v. Abbagnato, 10 C. C. A. 361, 62 F. 240 [26 L. R. A. 329].

In Stewart v. City of New Orleans, 9 La. Ann. 461, 61 Am. Dec. 218, it was held that the city was not liable in damages arising out of the killing of a slave by a police officer because the preservation of public order and tranquillity was a governmental function and, therefore, the city was not liable for the wrongful act of its officer. Joliff v. City of Shreveport, et al., 144 La. 62, 80 So. 200; Jones v. City of New Orleans, Louisiana, 143 La. 1073, 79 So. 865.

In the case of Lewis v. City of New Orleans, 12 La. Ann. 190, the court held that the city was not liable in damages for the death of a prisoner due to the failure of the jailer to take proper care of him on the theory that the municipal corporation was discharging a governmental function for the public welfare in maintaining the jail which was not operated for private advantage or profit.

In Howard v. City of New Orleans, 159 La. 443, 105 So. 443, 445, the plaintiff sued the city for damages for personal injuries alleged to have resulted through the negligence of one of its employees in the criminal court building in lowering an elevator and crushing the plaintiff. The defense was that the city was exempt from liability since the employee was discharging a governmental function. In disposing of the case adversely to the plaintiff, the court said:

"The Criminal Court building, in which the elevator, in this instance, was operated, is devoted to the holding of the criminal district court for the parish of Orleans. The building is used only for public purposes. In it the several divisions of that court, which is a state institution, convene and hold their sessions. Primarily, the duty of maintaining the building, and making it available for use, is a state duty, but the state has intrusted that duty to the city, and did so long before the accident in the present instance occurred, just as it has intrusted the maintaining of the various courthouses in the rest of the state to the respective parishes in which they are located. In our view, in operating the elevator, the city was engaged in discharging a public duty and in exercising a governmental function. Hence it is not liable in damages for the negligence of its agent and appointee in operating the elevator for it."

In the above case the Supreme Court cited with approval the case of Schwalk's Adm'r v. City of Louisville, 135 Ky. 570, 122 S. W. 860, 861, 25 L. R. A. (N. S.) 88. In that case the deceased was killed through the negligence of the employee of the city while riding in an elevator in the city hall. The court there held that maintaining the city hall including the operation of the elevator was a governmental function and hence the defendant was not liable, saying:

"The general rule on this subject is well stated in Burdick's Law of Torts as follows: 'Nonliability of City—There is a substantial agreement that it (a city) is not liable for the torts of its fire or police departments, nor for those of its boards of health or education; nor for those of any other officers, agents, or servants in the discharge of functions which primarily belong to the state, but the performance of which it has delegated to the municipality. Neglect of officers in guarding prisoners, or in caring for jurymen, or in keeping courthouses, townhouses, jails, or other public buildings in repair, will not subject the corporation to legal liability.' * * *"

In Godfrey v. City of Shreveport, 6 La. App. 356, the court held that the establishment

of a public park for the health and recreation of the general public was a governmental function, saying:

"Public parks and playgrounds are established by municipalities to promote the general welfare of the public at large. As places of recreation and amusement such parks promote the health and education of the citizens. In establishing and maintaining them the municipality exercises that sovereignty delegated to it for the welfare of its inhabitants. It derives no corporate gain therefrom and has no proprietary or corporate interest therein. Electric light and waterworks plants, street railways, and the like, are in the nature of private corporate enterprises established for the purpose of municipal gain. In the establishment of such governmental agencies the municipality acts in a proprietary capacity and as to them under the law the same duty and responsibility is imposed as is imposed upon private corporations.

"But not so with reference to public parks. They are established to promote public health and education. It is almost universally held that the establishment of departments of police, schools, health and fire by cities is a governmental function."

It appears that the question presented in the instant case has not been decided by any appellate court of this state and that in the other jurisdictions there is a conflict of authority with the great weight thereof in favor of the contention of the defendant.

In McQuillan on Municipal Corporations, vol. 6, § 2840, the rule is stated thus:

"In the conservation of public health in the various methods usually employed, municipal officers act in strictly governmental capacity, in accordance with the uniform course of judicial judgments, and hence, no municipal liability for injury due to the negligent performance of such function can arise. The rule has often been applied to the removal of garbage, filth and the like from the streets, public places and private premises, provided, however, that in the discharge of such duty no nuisance is created."

In American Law Reports, Annotated, vol. 14, p. 1477, we find:

"In the majority of jurisdictions the cleaning and sprinkling of streets or the removal of rubbish or garbage by a municipality is deemed to be a governmental function designed primarily to promote the public health and comfort, and the municipality is therefore not liable for the torts of employees to whom the performance of that function is delegated."

In City of Louisville v. Hehemann, 161 Ky. 523, 171 S. W. 165, 166, L. R. A. 1915C, 747, the court said:

"In the collection and disposition of garbage, undoubtedly the city acts for the public health and discharges a governmental function. In this regard, it is an agent or arm of the commonwealth, and for that reason is absolved from liability for the negligence of its employees."

In Love v. City of Atlanta, 95 Ga. 129, 22 S. E. 29, 30, 51 Am. St. Rep. 64, we find:

"With respect to matters concerning the public health, however, there is no serious conflict of reason, opinion, or authority upon the correctness of the proposition that the preservation of the public health is one of the duties that devolve upon the state as a sovereign power. It is such a duty as, upon proper occasion, justifies the exercise of the right of eminent domain, and the demolition of structures which endanger or imperil the public health, in the discharge of such duties as pertain to the health department of the state, the state is acting strictly in the discharge of one of the functions of government. If the state delegate to a municipal corporation, either by general law or by particular statute, this power, and impose upon it, within its limits, the duty of taking such steps and such measures as may be necessary to the preservation of the public health, the municipal corporation likewise, in the discharge of such duty, is in the exercise of a purely governmental function, affecting the welfare not only of the citizens resident within its corporation, but of the citizens of the commonwealth generally, all of whom have an interest in the prevention of infectious or contagious diseases at any point within the state, and in the exercise of such powers is entitled to the same immunity against suit as the state itself enjoys. * * * It can make no difference in principle as to the character of the agents employed in the discharge of this duty with respect to the public health. The principle of nonliability rests upon the broad ground that in the discharge of its purely governmental functions, a corporate body to which has been delegated a portion of the sovereign power is not liable for torts committed in the discharge of such duties and in the execution of such powers. It can be no more liable because of the fault to select competent drivers of garbage carts than a city could be held liable for failing to elect a wise, conservative, and discreet mayor. * * * However incongruous it may appear to be to say that this diminutive darky and this refractory mule were engaged in the per-

formance of some of the functions of government, it is nevertheless true, and illustrates how even the humblest of its citizens, under the operations of its laws may become, in Georgia, an important public functionary."

In City of Tuscaloosa v. Fitts, 209 Ala. 635, 96 So. 771, 772, the court said:

"The defendant is a municipal corporation. To it has been delegated the right to establish and maintain crematories for the destruction of garbage and like substances, either within or without the city limits, and to haul or cause to be hauled to such crematories 'trash and garbage of all kinds,' and cause the destruction of the same therein. Section 1282, Code 1907. These are governmental functions, delegated by the Legislature to municipalities, designed primarily to promote public health and comfort to the public as a whole, and the municipality is not liable for the torts of its agents or employees occurring while in the exercise and in the performance of that governmental function."

In Savannah v. Jordan, 142 Ga. 409, 83 S. E. 109, 111, L. R. A. 1915C, 741, Ann. Cas. 1916C, 240, it is stated:

"It is not the character or name of the agent who executes the duty of removing the cause of discomfort and ill health to the public which fixes the character of the duty performed, but it is the act itself which determines whether it be governmental or ministerial. It is immaterial whether the work is done under the supervision of the board of health of a municipality, or by the 'director of public works,' or under the 'streets and lanes department.' The duty is the same, and that is to remove from the streets all the sweepings and garbage and whatever would contaminate the atmosphere and breed pestilence and disease; and such a duty is a governmental and not a ministerial function. It is one that the entire public living within or without the municipality is concerned in, the enforcement of laws for the preservation of the comfort and health of the citizen."

In Condict v. Mayor, etc., of Jersey City, 46 N. J. Law, 157, the court uses the following language:

"The removal of ashes and garbage placed by the inhabitants in boxes and barrels upon the sidewalks, is part of the duties of this board in their supervision over and care for the cleanliness of the streets. A dumping-ground and horses, carts and drivers, to carry the ashes and garbage to the place of deposit, are necessary to enable the board to carry into execution its public duties in this respect; and the board is supplied with horses and carts and authorized to employ drivers at public expense for this purpose. It is the settled law of this state that an action will not lie in behalf of an individual who has sustained a special damage from the neglect of a municipal corporation to perform a public duty, unless the right to sue for such an injury is given by statute."

To the same effect see: Harris v. District of Columbia, 256 U. S. 650, 41 S. Ct. 610, 65 L. Ed. 1146, 16 A. L. R. 1471; City of Savannah v. Jones, 149 Ga. 139, 99 S. E. 294; McFadden v. Jewel, 119 Iowa, 321, 93 N. W. 302, 60 L. R. A. 401, 97 Am. St. Rep. 321; Kippes v. Louisville, 140 Ky. 423, 131 S. W. 184, 30 L. R. A. (N. S.) 1161; Johnson v. Somerville, 195 Mass. 371, 81 N. E. 268, 10 L. R. A. (N. S.) 715; Cassidy v. St. Joseph, 247 Mo. 197, 152 S. W. 306; Behrmann v. St. Louis, 273 Mo. 578, 201 S. W. 547; Connor v. Manchester, 73 N. H. 233, 60 A. 436; Conelly v. Nashville, 100 Tenn. 262, 46 S. W. 565; Bruhnke v. La Crosse, 155 Wis. 485, 144 N. W. 1100, 50 L. R. A. (N. S.) 1147; Scibilia v. City of Philadelphia, 279 Pa. 549, 124 A. 273, 32 A. L. R. 981; James v. Charlotte, 183 N. C. 630, 112 S. E. 423; Manning v. Pasadena, 58 Cal. App. 666, 209 P. 253; McCrary v. City of Rome, 29 Ga. App. 384, 115 S. E. 283.

In the instant case there can be no doubt that the maintenance and operation of a garbage collection and disposal system is for the protection and preservation of the public health and welfare and, as such, is a delegation of a governmental function by the sovereign state to the city. The municipality does not make any charge or assess any fee in connection with this service, the system being maintained and operated out of the general tax fund. We conclude that the employee was engaged in a governmental function at the time of the unfortunate accident and, therefore, the city is exempt from liability for the tortious acts of its employees or representatives.

Counsel for the plaintiff has referred us to the following cases: Ostrom v. San Antonio, 94 Tex. 523, 62 S. W. 909; City of Stephenville v. Bower, 29 Tex. Civ. App. 384, 68 S. W. 833; Quill v. City of New York, 36 App. Div. 476, 55 N. Y. S. 889; Smiddy v. Memphis, 140 Tenn. 97, 203 S. W. 512; Boise Dev. Co., Ltd., v. Boise City, 30 Idaho, 675, 167 P. 1032. The best that can be said with reference to these authorities is that they represent the minority view.

Plaintiff also refers us to the cases of

Chopin v. City of New Orleans, 8 La. App. 152, and Shalley v. New Orleans Public Service & City of New Orleans, 159 La. 519, 105 So. 606. In these cases the city was sued for damages alleged to have resulted from the negligent acts of employees discharging their duties in connection with the sewerage and water board. An attempt was made on appeal by way of an exception of no cause of action to raise the defense that the representatives of the city were engaged in a governmental function. The court declined to entertain the issue on the ground that it had not been raised in the lower court and passed upon there.

The case of West Monroe Manufacturing Company v. Town of West Monroe, 146 La. 641, 83 So. 881, while giving a general discussion on the subject, is not helpful because the decision goes off on the ground that the petition of the plaintiff was fatally defective in not making certain sacramental allegations.

In the cases of Holden v. Toye Bros. Auto & Taxicab Co., Inc., and Sewerage & Water Board of City of New Orleans, 1 La. App. 521, Whalon v. Sewerage & Water Board, 142 La. 735, 77 So. 520, and Sewerage & Water Board of New Orleans v. Peter Thelan et al., 4 Orl. App. 322, in which the sewerage and water board was held liable in damages for the negligence of its employees, the issue presented here was not raised as a defense.

In the cases of Davis v. New Orleans Public Belt Railroad, 155 La. 504, 99 So. 419, 31 A. L. R. 1303, and Solomon v. City of New Orleans, 156 La. 629, 101 So. 1, it was held that the city of New Orleans was liable for the negligent acts of its employees in operating the Public Belt Railroad created under Act No. 179 of 1908 and the amendment to the Constitution adopted in 1916 because it was exercising a municipal and corporate function for private gain and profit.

Finally it is interesting to note that in the case of Howard v. City of New Orleans, supra, the Supreme Court said:

"While the duty of a municipality to keep its streets and sidewalks in safe condition may be said to be a governmental duty, yet the rule that makes it liable for negligence in failing to exercise the governmental function of keeping them in repair is an exception to the rule above stated, to the effect that a municipality is not liable in damages for failure to exercise a governmental function, intrusted to it, or for the negligence of its agents in exercising it, and, being an exception to the rule, necessarily does not overthrow the rule."

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.