(115 So. 136)

No. 26784.

**VICKSBURG, S. & P. RY. CO. v. CITY OF MONROE.**

Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Street railroads** ☞41(4)—**City operating street railway does not, in determining right to require railroad to construct crossing over tracks, enjoy status of governmental agency; "private undertaking for private gain" (Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7).**

Operation by the city of Monroe of street railway, pursuant to authority in Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7, constitutes a private undertaking for private gain, and the municipality, in determining right to require railroad to construct appropriate crossing over tracks, does not enjoy the status of the governmental agency, but is governed by rules applicable to a private corporation.

2. **Street railroads** ☞41(4)—**City, operating street railroad, must maintain it at own expense, and not at cost of another railroad under sovereign privilege of regulation (Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7; Act No. 47 of 1900, § 9, par. 31; Act No. 193 of 1912).**

City of Monroe, operating street railway pursuant to authority of Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7, has duty of maintaining such private undertaking. at its own expense, and not at cost of another railroad operated within corporate limits; on

theory of sovereign privilege of regulation under Act No. 47 of 1900, § 9, par. 31, and Act No. 193 of 1912.

3. **Street railroads** ☞41(4)—**Ordinance, requiring railroad to construct crossing over street railway later constructed by city, held ultra vires (Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7; Act No. 25 of 1916, § 2, subd. B).**

Ordinance, requiring railroad within municipality to construct crossing over street railway later constructed by municipality pursuant to authority of Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7, *held* ultra vires under Act No. 25 of 1916, § 2, subd. B, requiring extra cost made necessary by presence of tracks to be borne by municipally owned railway.

4. **Constitutional law** ☞297—**Ordinance requiring railroad to construct crossing over street railway later constructed by city held void as taking property without due process (Const. La. art. 1, § 2; Const. U. S. Amend. 14).**

City ordinance, requiring railroad to construct crossing over tracks of later constructed municipal street railway, *held* void as taking of property without due process of law in violation of Const. La. art. 1, § 2, and Const. U. S. Amend. 14.

5. **Street railroads** ☞41(4)—**Municipal corporation, operating street railway, must construct crossings intersecting railroad (Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7).**

City, operating street railway pursuant to authority of Act No. 35 of 1904, § 3, amending Act No. 47 of 1900, § 9, par. 7, being the latest company, must construct crossings used by it at intersection with railroad.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Suit by the Vicksburg, Shreveport & Pacific Railway Company against the City of Monroe. Judgment for plaintiff, and defendant appeals. Affirmed.

Harry H. Russell, of Monroe, for appellant.

Stubbs & Thompson, of Monroe, for appellee.

LAND, J. The Vicksburg, Shreveport & Pacific Railway Company acquired its pres-

ent line of railroad from the Vicksburg, Shreveport & Texas Railroad Company, which owned and operated a standard gauge steam railroad, running through the city of Monroe, La., from a point on the west bank of the Mississippi river opposite Vicksburg to the Texas line.

As early as the year 1856, the Vicksburg, Shreveport & Texas Railroad Company acquired a right of way through a portion of what is now the city of Monroe, and constructed in the year 1857 the line of railroad now owned and operated by plaintiff company through that city and along the right of way so secured. This right of way has been used by plaintiff company and its predecessors continuously since the original construction of this line in the year 1857.

Subsequent to the building of the line of railroad now owned by plaintiff company, North Second street was laid out and extended across the right of way and tracks of plaintiff company in the city of Monroe.

About the year 1906, the city of Monroe, under authority granted by its charter, constructed a municipally owned railway along North Second street, and crossed with its line the right of way and tracks of plaintiff company. Act 35 of 1904, § 3, amending paragraph 7, § 9, of Act No. 47 of 1900.

During the year 1923, the city of Monroe, acting under its charter, passed an ordinance ordering the paving of North Second street, which was to be paid for by the city of Monroe and the abutting property owners, in accordance with the terms of said ordinance.

On March 8, 1923, Ordinance No. 2348 was passed by the city of Monroe containing the following provisions:

"Section 1. Be it ordained by the city council of the city of Monroe, Louisiana, in legal session convened, that the owner or owners of any railroad track or tracks, occupying any portion of any street intersection within the city of Monroe, Louisiana, which said street intersection is also partially occupied by any track of the municipal street railway of the city of

Monroe, shall install, occupy and maintain, in an efficient, proper, safe, suitable and good condition, appropriate crossing or crossings of the tracks of said railroad and said municipal street railway of the city of Monroe, La. The installation, occupation and maintenance of said crossings to be at all times at the expense of the owner or owners of the said railroad track or tracks, and the type of construction, material, width and other specifications for the said crossing to be prescribed by the city engineer of the city of Monroe, Louisiana.

"Section 2. Be it further ordained, etc., that whenever it is deemed necessary, by the city council of the city of Monroe, Louisiana, that a crossing between a track of a railroad and the municipal street railway of the city of Monroe, be installed, or that any existing crossing be repaired, renewed or replaced, the mayor of the city of Monroe shall give notice to the owner of the railroad track or tracks using such crossing with the municipal street railway track, to do the work deemed necessary, as aforesaid, said notice to be in writing and to set forth the work deemed necessary, as aforesaid, and in the event the owner or the owners of the said railroad track or tracks aforesaid failing to comply with the requirements of the said notice, within the period of time prescribed in said notice, the city council of the city of Monroe shall have the said work done, at the expense of the owner or owners of the railroad track or tracks aforesaid.

"Section 3. Be it further ordained, etc., that this ordinance shall take effect ten (10) days after its promulgation, as the law directs."

On the date of the passage of this ordinance, March 8, 1923, a resolution was also adopted, reciting that a controversy had arisen between the city of Monroe and the Vicksburg, Shreveport & Pacific Railway Company as to the right of the city of Monroe to impose on said company the costs and duties exacted by Ordinance No. 2348. With full reservation in said resolution to all parties of the right to resort to the courts to settle their differences, plaintiff company agreed, pending the decision by the courts, and in compliance with the wishes of the city of Monroe, to install at its expense the new crossings required by the ordinance, provided such action should be entirely without prejudice to any of its rights in the premises, which were

fully reserved in the resolution adopted by the city of Monroe, and also in a written agreement subsequently signed on behalf of the city of Monroe and plaintiff company, and duly authorized by the resolution in question.

In accordance with said resolution and agreement, plaintiff company had made and installed, at an extra cost of $2,131.00, new crossings between its tracks and the tracks of said municipal railway, as specifically set forth in said resolution and in accordance with the plans and specifications of the engineer of the city of Monroe.

Payment having been refused by the city of Monroe, after amicable demand, plaintiff company instituted the present suit to have Ordinance No. 2348 of the city of Monroe decreed ultra vires, unconstitutional, and of no legal effect, and to recover the sum of $2,131, with 5 per cent. interest from December 27, 1923, until paid.

From a judgment in favor of plaintiff company for the amount sued for with interest, the defendant, the city of Monroe, has appealed.

Plaintiff company attacks Ordinance No. 2348 of the city of Monroe upon the following grounds:

(1) That said ordinance is ultra vires, and of no binding effect, in so far as it undertakes to compel plaintiff company to pay for the cost of the extra work made necessary by the presence of the tracks of said municipal railway in the street to be improved, as section 2B of Act 25 of 1916 requires such extra cost to be borne by the municipally owned railway.

(2) That said ordinance violates section 2 of article 1 of the Constitution of the state of Louisiana, and the Fourteenth Amendment to the Constitution of the United States, on the ground that it attempts to deny to plaintiff company and other railroads entering the city of Monroe the equal protection of the law, and is a taking of property without due process of law.

On the other hand, defendant avers in its answer that Ordinance No. 2348 was passed in the legal exercise of the lawful powers of respondent municipality.

Defendant claims that it is expressly empowered, under paragraph 31, § 9, of Act 47 of 1900, "to authorize the use of the streets for telephone, telegraph and electric light lines, by railroads operated by horse, electric, steam or other power, and for gas, water pipes and sewers and to regulate the same."

It is also contended by defendant that, under Act 193 of 1912, it is the legal duty of railroads using the streets of a municipality to keep such streets in repair and in proper condition for use by vehicular traffic.

It appears, however, that defendant is a municipal corporation, authorized by its charter "to construct, own, operate and maintain within or without the city, and within or without the parish of Ouachita, electric street railways and to supply power to private individuals or corporations for any purpose." Paragraph 7, § 9, as amended by section 3, of Act 35 of 1904.

It is said in City of New Orleans v. Kerr and Gally, 50 La. Ann. 417, 23 So. 386, 69 Am. St. Rep. 442:

"The powers and obligations of municipal corporations, like the city of New Orleans, are twofold in character: Those that are of a public nature, and those that are of a private nature.

"This court by repeated decisions has recognized this distinction. Egerton v. Third Municipality of New Orleans, 1 La. Ann. 437; Stewart v. City of New Orleans, 9 La. Ann. 461, 61 Am. Dec. 218; Lewis v. New Orleans, 12 La. Ann. 190; Howe v. City of New Orleans, 12 La. Ann. 482; Bennett v. City of New Orleans, 14 La. Ann. 120; New Orleans, M. & C. Ry. Co. v. City of New Orleans, 26 La. Ann. 478.

"As to the first, or public character of its powers and obligations, the municipal corporation represents the state, discharging duties incumbent on the state. As to the second, or private character of its powers and obligations,

the municipal corporation represents the pecuniary and proprietary interests of individuals.

"As to the first, where a municipal corporation acts as the agent of the state, it becomes the representative of sovereignty, and is not answerable for the nonfeasance or malfeasance of its public agents.

"As to the second, the rules which govern the responsibility of individuals are properly applicable. 15 Am. & Eng. Enc. of Law, p. 1141; Western College v. City of Cleveland, 12 Ohio St. 375; Rusher v. City of Dallas (Tex. Sup.) 18 S. W. 333; Whitfield v. City of Paris (Tex. Sup.) 19 S. W. 566; O'Rourke v. City of Sioux Falls, 4 S. D. 47, 54 N. W. 1044 [19 L. R. A. 789, 46 Am. St. Rep. 760]; Gianfortone v. City of New Orleans (C. C.) 61 F. 64 [24 L. R. A. 592]; City of New Orleans v. Albagnato, 10 C. C. A. 361, 62 F. 240 [26 L. R. A. 329]."

In Davis v. New Orleans Public Belt R. R., 155 La. 504, 99 So. 419, 31 A. L. R. 1303, it was held that the city of New Orleans, in operating the Public Belt Railroad, created under Act 179 of 1908, and the amendment to the Constitution adopted in 1916 (see Act No. 9, Extra Session of 1917), was exercising a municipal or corporate function for private gain, and not a governmental agency, and hence the railroad was subject to suit for damages for the killing of plaintiff's son by its train at a street crossing. See, also, 28 Cyc. pages 267–269.

[1] It is clear, therefore, that the operation by the city of Monroe of a street railway is a private undertaking for private gain, and that the position of defendant municipality in the case at bar is the same as that of a private corporation engaged in the same business.

While, in the matters affecting the public welfare, the city of Monroe may pass all reasonable ordinances as to the regulation of railroads within its jurisdiction, under the statutes relied upon in this case, yet, quoad its private enterprise, or street railway, defendant municipality does not enjoy the status of a governmental agency, but is governed by the rules applicable to a private corporation.

[2] It follows, necessarily, that the city of Monroe is without right to claim, and without power to assert by ordinance, in the present case, the sovereign privilege of regulation as to the railroad owned and operated by plaintiff company, by the imposition upon said company of the compulsory duty of installation and maintenance of the crossings in question at its expense. It is plainly the duty of defendant municipality to maintain its street railway, a private undertaking, at its own expense, and not at the cost of another railroad operated within the corporate limits. State of Georgia v. City of Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 68 L. Ed. 796.

[3, 4] For these reasons, our conclusion is that Ordinance No. 2348, passed by the city of Monroe on March 8, 1923, is ultra vires. The ordinance is null and void also, as it takes the property of plaintiff company without due process of law.

"The expense of constructing the crossing must, as a rule, be borne by the company seeking the crossing. In the absence of any statutory enactments regulating the subject, the rule seems to be that the latest company must, at its expense, construct the crossing." 3 Elliott on Railroads (3d Ed.) § 1608, p. 441.

[5] In the absence of statutory regulation in this state, we must apply, as the law applicable to the case, the rule that defendant municipality, as the latest company, must construct the crossings used by it at the intersection of North Second and Jefferson streets at its own expense.

The correctness of the claim of plaintiff company as to amount is admitted.

Judgment affirmed.

O'NIELL, C. J., concurs in the decree, but not in the statement that the operating of the street railway by the city was a private undertaking for private gain.